UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| JOSEPH ARTHUR KETOLA,<br># 181020, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:11-cv-135 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| PAUL KLEE, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |

This is a habeas corpus action brought by a state prisoner under 28 U.S.C.
§ 2254. On February 6, 2008, an Allegan County Circuit Court jury found petitioner
guilty of first-degree home invasion, Mich. Comp. Laws § 750.110a(2), and aggravated
assault, Mich. Comp. Laws § 750.81a. Petitioner's convictions arise out of his conduct
on the evening of August 12, 2007, in which he assaulted his wife, Brittany Ketola.

On March 7, 2008, Judge William Baillargeon sentenced petitioner to ten to
thirty years' imprisonment on his first-degree home invasion conviction and twelve
months in jail on the aggravated assault conviction. After unsuccessful attempts to
overturn his convictions and sentence in state court, petitioner filed his habeas corpus
petition. Petitioner asks this court to overturn his conviction and sentence on the
following grounds set forth in his amended petition:

I.      Petitioner's Fourteenth Amendment due process right to notice
        and his Fifth Amendment rights were violated when the trial court
        allowed amendment of the information.

II.    Petitioner's Sixth Amendment right to attorney-client privilege was violated when a jail officer overheard petitioner's trial strategy, informed the prosecutor, and the prosecutor moved to preclude any defense of involuntary intoxication.

III.   Petitioner's Fourteenth Amendment due process rights and his Sixth Amendment right to present a defense were violated when the Allegan County jail's recordings of telephone conversations were destroyed.

IV.    Petitioner's Fourteenth Amendment right to present a defense was violated the trial court judge denied petitioner's counsel's request for a forensic evaluation.

V.     Petitioner's Fourteenth Amendment right to present a defense was violated by the trial court's limitation on expert testimony.

VI.    Petitioner's Fourteenth Amendment due process rights and his Fifth Amendment rights were violated when the prosecutor asked for modification of the information to match the evidence at trial.

VII.   Petitioner's Fourteenth Amendment due process rights were violated by a jury instruction with regard to first-degree home invasion that relieved the prosecution of the burden of proving specific intent.

(Amended Petition, ECF No. 14, PageID.531-38).[1]

Respondent filed his answer to the petition. Respondent argues that the petition should be denied because all grounds raised by petitioner lack merit. (Answer at 2, 26-47, ECF No. 30, PageID.629, 653-74). In addition, petitioner argues that Grounds IV and VII are barred by procedural defaults. (*Id.* at 9, 36-38, 43-45, 47, PageID.636, 663-65, 670-72, 674).

_____

[1]On September 18, 2012, the unexhausted claims of ineffective assistance of counsel that petitioner attempted to assert in connection with Grounds IV and V were dismissed. (ECF No. 29).

After review of the state-court record, I find that all grounds raised in the petition lack merit.[2]  Accordingly, I recommend that the petition will be denied.

## Standard of Review

The Court's review of this petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted).  "AEDPA requires heightened respect for state court factual and legal determinations."  *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). "State-court factual findings [] are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence."  *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied.  28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court

---

[2]Both the Supreme Court and the Sixth Circuit have indicated that this Court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural default question.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015); *Scott v. Houk*, 760 F.3d 497, 506 (6th Cir. 2014).  In the present case, the grounds raised by petitioner are meritless, so a detailed analysis of the complicated procedural default issues is unnecessary.

proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)).  AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (*per curiam*).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Id.* at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).  Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *Davis v. Ayala*, 135 S. Ct. at 2198; *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings—not dicta—of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. at 1702; *see Woods v. Donald*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court."). "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.* (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 132 S. Ct. at 2155); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  Section 2254 (d)(2) requires that this Court accord the state trial court substantial deference.  If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

## Findings of Fact

### A.    Circuit Court Proceedings

#### 1.    Pretrial Motions

Petitioner was charged with first degree home invasion, assault with intent to do great bodily harm less than murder, and second-degree child abuse.  Judge Baillargeon conducted a number of pretrial hearing on various motions.  The first such hearing was held on November 13, 2007.  (Motion Hearing (MH I), ECF No. 32).  The prosecutor filed a motion to allow the impeachment of petitioner, if he chose to testify at trial, by his prior criminal convictions involving theft and dishonesty under Rule 609 of the Michigan Rules of Evidence.  The prosecutor produced certified copies showing petitioner's convictions for the felonies of filing of a false police report and breaking and entering of a motor vehicle.  The court granted the motion.  (MH I, 2-4).

Petitioner's counsel indicated that the defense was contending that "the alleged victim, Brittany Ketola had been consuming alcohol, prescription medications, [and] admittedly consumed marijuana."  The defense also believed that Mrs. Ketola used

cocaine.  Counsel requested funds to obtain an expert who could testify regarding whether mixing prescription medications with alcohol and controlled substances would affect a person's credibility and/or impact that person's aggressiveness.  (MH I, 7). Counsel was also seeking expert testimony regarding the medical trauma and injuries that petitioner suffered and its impact on a person's memory or the ability to formulate specific intentions or actions.  The court approved this request for funds.  (MH I, 7-8).

Petitioner's counsel moved to quash all the charges.  Judge Baillargeon found that the testimony elicited during petitioner's preliminary examination established probable cause and he denied the motion.  (MH I, 9-17).

Judge Baillargeon next considered petitioner's counsel's motion to exclude the statements that petitioner gave to the police.  The judge heard testimony from Michigan State Police Trooper Benjamin Clearwater and petitioner.  Trooper Clearwater testified that petitioner did not appear to be too intoxicated to know what was happening.  (MH I, 20).  Trooper Clearwater read petitioner his *Miranda* rights and he appeared to understand them.  After having been informed of those rights, petitioner voluntarily elected to speak to Trooper Clearwater and offered a version of events minimizing his involvement.  Petitioner's speech was not slurred.  Trooper Clearwater never saw petitioner lose consciousness. (MH I, 20-29).  Petitioner testified that he had no independent recollection of this meeting or his statements.  (MH I, 30, 34).  Judge Baillargeon denied petitioner's motion to exclude his statements.  He found sufficient evidence that petitioner made a knowing and voluntary waiver of his *Miranda* rights.  (MH I, 36-37).

On January 30, 2008, the court conducted another hearing on a number of motions. (Motion Hearing II (MH II), ECF No. 33). Among the matters addressed was petitioner's counsel's motion regarding production of telephone recordings of conversations between petitioner and Brittany Ketola. Petitioner's counsel indicated that it was his understanding that the recording system at the Allegan County jail had crashed. It was his understanding that there were no recordings to be produced, but if recordings existed, he wanted copies. The prosecutor confirmed that there were no recordings: "There are none, Your Honor. I have checked with Deb Marcuilis from the jail; and unfortunately during the process of fixing their computer system, those were destroyed." (MH II, 14).

The next motion addressed was petitioner's counsel's motion in limine regarding petitioner's parole status. Petitioner was on parole on the date the crimes alleged in the information occurred. (MH II, 14). Petitioner's attorney asked that the prosecution's witnesses not be permitted to raise the issue of petitioner's parole status at the time in question. The prosecutor had no objection and the motion was granted. (MH II, 14-15).

On February 1, 2008, Judge Baillargeon conducted a hearing on the prosecution's motion to exclude a witness, Dr. Michael Groff, that the defense had disclosed a few days earlier. (Hearing Transcript (HT), 3-4, ECF No. 34). Petitioner's counsel responded that he had received the expert's report on January 30, 2008, and that it was provided to the prosecutor as soon as possible. (HT, 8). Petitioner's counsel did not intend to try to introduce Dr. Groff's report into evidence. Further, he

indicated that he was aware that an expert witness cannot testify as to the ultimate issue, particularly whether petitioner formed the intent to either commit an assault or an assault with intent to do great bodily harm. (HT, 10). The court agreed, and indicated that offering such an opinion would cross the line and likely result in a mistrial. (HT, 10). Judge Baillargeon denied the prosecutor's motion to exclude Dr. Groff, but he made it clear that the doctor's report itself would not be brought into evidence. (HT, 11). Dr. Groff would not be permitted to testify as to any cause and effect relationship. He could be asked whether a specific behavior would be consistent or inconsistent with having a concussion. (HT, 11-12).

Petitioner expressly withdrew his requests for an adjournment of trial and a referral for a forensic examination. Petitioner's attorney noted on the record that the requests had been made in an "alternative arguments" section of petitioner's response to the prosecutor's motion in limine regarding Dr. Groff. Counsel had a "detailed discussion" regarding these matters with petitioner. Petitioner had been advised of the purpose of a forensic examination and what would be necessary for the court to order such an examination. Petitioner and his attorney advised Judge Baillargeon that the requests to adjourn the trial and for a referral for a forensic examination were withdrawn. (HT, 13).

Another issue raised at the hearing on February 1, 2008, concerned possible testimony from two doctors regarding alcohol, controlled substance, and prescription medications. Petitioner's attorney indicated that he had two doctors listed as potential witnesses and had indicated that he would let them know as soon as possible whether

their testimony would be needed or not.  (HT, 16).  Petitioner's attorney sought clarification regarding whether cross-examination of Brittany Ketola would extend to whether she was bipolar, whether she was taking prescription medications for that condition or other conditions, and her alcohol consumption and marijuana use.  (HT, 16-17).  Judge Baillargeon noted that testing had indicated that there was no alcohol use or illegitimate drug use by Brittany Ketola.  Petitioner's counsel was investigating possible grounds for challenging those test results, but if the tests stood up, Mrs. Ketola's use of alcohol or illegal drugs would not be issues.  She was not on trial and her medical condition was not at issue.  Petitioner's counsel remained free to cross-examine Brittany Ketola regarding assaultive behavior.  (HT, 17-19).

> 2. <u>Trial</u>

Petitioner's trial began on February 4, 2008, and it concluded with the jury's verdict on February 6, 2008, finding petitioner guilty of first-degree home invasion and aggravated assault.  (Trial Transcripts, TT I-TT III, ECF No. 35, 36, 38).  Brittany Ketola testified that, on August 12, 2007, she was living in an apartment in Shelbyville, Michigan, with petitioner and their two minor children.  (TT I, 131-33).  Kevin Rose and his girlfriend Betsy Barnhardt and their children lived in the apartment beneath Ketolas' apartment.  (TT I, 133; TT II, 66-68, 100, 123).  The lower apartment was a walk-out unit with sliding doors.  (TT I, 134-35).

Petitioner was drinking alcohol on the date in question.[3]  (TT I, 135).  He was outside the apartments.  He became involved in an argument with others regarding payment for his tattoo work.  (TT I, 137).  Brittany Ketola testified that she was headed back to her apartment with petitioner and their two month old son.  Brittany did not think that the way petitioner was holding their baby was appropriate. Petitioner had a bottle of vodka in one hand and was holding the baby in his other arm. (TT I, 140).  That is when petitioner's argument with Brittany Ketola started.  Once inside the livingroom of their apartment, petitioner put down the baby and began hitting Brittany.  (TT I, 141, 174).  Petitioner is a big man and he is very strong.  (TT I, 167, 176).  Petitioner hit Brittany with his closed fist in the face and on the side of her head.  Brittany testified that she felt like she was going to get sick.  She went to the bathroom.  When she bent down over the toilet to throw up, petitioner kicked her in the back.  He was wearing boots.  Petitioner was aware that Brittany had the preexisting back problem of three bulging disks.   (TT I, 142-43, 177-78).  Brittany Ketola was able to make it into the next room.  She was near the bed when petitioner grabbed her and started to take her down on the bed.  She testified that she thought petitioner was going to kill her.  She grabbed the hammer off the dresser[4] and hit petitioner on the head.  (TT I, 144-46, 181-81).  At some point, petitioner stopped

---

[3]Tests indicated that petitioner had a blood alcohol content of .14 grams of alcohol per 100 milliliters of blood.  (TT I, 126; TT II, 200).

[4]A day earlier, Brittany had been hanging pictures and had left a hammer on the dresser.  (TT I, 144).

hitting her and she was able to push him off of her, gather her children, and seek shelter in the downstairs apartment with Kevin Rose and Betsy Barnhardt.

Kevin Rose testified that he had heard the ruckus from the upstairs apartment, including Brittany screaming at petitioner to stop hurting her. (TT II, 77). Mr. Rose let Brittany into his apartment and locked the sliding glass door behind her. (TT II, 77-79, 107). Brittany called 911 from that apartment. (TT I, 148-49, 184; TT II, 79, 130). The 911 recording was played for the jury. (TT II, 6, 87).

Petitioner followed Brittany. (TT I, 185). Petitioner began knocking on the door. Kevin Rose did not let petitioner into his apartment. Petitioner did not have permission to enter the apartment. Petitioner ripped the sliding door open and broke the locking mechanism and the screen door. (TT II, 80, 83, 86, 90, 92, 107-08, 116, 130-36, 156-57, 192, 202, 222). Petitioner cocked his fist and threatened Kevin Rose. (TT II, 80, 83, 89, 92, 110-11, 157-58).

Petitioner eventually became less confrontational and indicated that he wanted to talk to Brittany. Brittany was sitting in a chair in Kevin Rose's living room. Mr. Rose allowed petitioner to speak to Brittany. Petitioner asked Brittany to run away into the woods with him before the police arrived. Brittany refused and expressed fear that petitioner would kill her if she went with him. (TT I, 150, 190, 198; TT II, 81-82, 114, 159). Petitioner was speaking coherently and Ms. Ketola had no difficulty understanding him. (TT I, 151, 161).

When the police arrived, they found Brittany Ketola sitting in a chair in the living room of the downstairs apartment with petitioner standing over her. (TT II, 11-

-12-

15).  Brittany's face was very red and swollen and she was crying.  Petitioner was standing over her and he was bleeding from his head wound.  (TT II, 13).  Trooper Ernstes heard petitioner asking Brittany Ketola to run away with him before the police arrived.  Ms. Ketola was very upset and indicated that she was not going to lie for petitioner again because he had beaten her.  (TT II, 193-94).

Petitioner became very agitated with the police.  For the safety of all concerned, petitioner was placed in handcuffs and moved out to a lawn chair until additional officers and medical assistance arrived.  (T II, 15, 17, 171, 194-95, 223).  When Deputy Randy Beute of the Allegan County Sheriff's Department arrived, the EMS crew and the State Troopers were attending to the female victim.  Petitioner was seated on a lawn chair not far away and was in handcuffs.  Petitioner was coherent.  Despite directions from Deputy Buete to keep quiet, petitioner continued to swear and direct crude remarks to Ms. Ketola, making her even more upset.  (TT II, 172-73).  Deputy Beute moved petitioner to the back seat of his patrol car, but left the door open.  (TT II, 173-74).  Deputy Beute was not sure whether petitioner actually passed out or was acting.  (TT II, 184-85).  Petitioner was moved to an ambulance and transported to a hospital for medical treatment.  (TT II, 18, 176).  Brittany was also transported to the hospital emergency department for treatment.  (TT II, 46-64).

Petitioner appeared to be coherent at the hospital.  He was complaining that he had been assaulted.  (TT II, 19-20, 36).  Petitioner elected to make a statement after he was given his *Miranda* warnings.  (TT II, 21-23, 38).  Petitioner claimed that Brittany had attacked him and hit him in the back of the head.  He claimed to have

chased her downstairs.  He claimed that the people downstairs simply let him into their apartment.  (TT II, 23-24).

After the prosecution closed its case in chief, the court addressed a number of motions outside the jury's presence.  Judge Baillargeon first considered petitioner's counsel's motion for a directed verdict.  The court denied the motion, finding that there was evidence from which a reasonable jury could find petitioner guilty on all charges.  (Motion Transcript (MT), 2-8, ECF No. 37).  The judge also granted the prosecutor's motion to amend the home invasion charge to breaking and entering a dwelling and committing an assault while present in the dwelling.  (MT, 8-15).

Finally, Judge Baillargeon considered a motion to exclude a defense of involuntary intoxication, which the prosecutor summarized as follows:

> My last motion is the People's motion to exclude the defense of intoxication by Mr. Ketola.  Now, Mr. Ketola can come in and present witnesses that say he's intoxicated, I presented some witnesses that said he was intoxicated.  I think the general consensus so far is that he was intoxicated.  However, it has come to my attention, not through Mr. Ketola or his attorney, but actually through outside sources that Mr. Ketola intended this week to spring on me that he now feels that what he calls GBH or even valium – I think he's going to say valium, and I say that only because I'm reviewing Dr. Condon's report it looks like he was – he did have valium within his system at the time that his blood was drawn on the night in question.  So I believe, I anticipate, that he's going to assert that somebody slipped-or his wife slipped valium or I heard earlier possibly GBH which is what we commonly call date rape drug in his glass of alcohol, and that he had no idea it was in there.  Had no idea what effect it would have on him and so therefore it's a involuntary intoxication, which is diminished capacity that doesn't exist any longer, and the case law that I've cited for the Court which is *People versus Wilkins* at 184 Mich App 433, which is a 1990 case, states that  that's somewhat of a temporary insanity if not a full blown insanity defense, and under those rules and regulations I was entitled to notice several weeks ago that Mr. Ketola was going to assert this type of defense.  There are rules and regulations that apply to this type of defense.  Voluntary

-14-

> intoxication is not a defense, involuntary intoxication goes under the insanity rules. There's been no forensic findings in this case and again, we are bootstrapping a defense that is not allowed under these circumstances by trying to call it something else.

(MT, 17-18). Petitioner's counsel indicated that petitioner would not be claiming temporary insanity. Petitioner was not claiming an involuntary intoxication or insanity defense. (MT, 19-20). He did not dispute that *Wilkins* remained good law. Judge Baillargeon found that under *Wilkins,* the prosecutor had been entitled to advance notice of an involuntary intoxication defense and granted the prosecutor's motion. (MT, 20).

Dr. Michelle Condon testified that she was an emergency room physician and that she treated petitioner on August 12, 2007. (TT III, 28). She treated plaintiff's lacerations. She offered a diagnosis of a concussion based on petitioner's report to her of a loss of consciousness and complaints of a headache. (TT III, 33). Earlier, petitioner told paramedics that he had not lost consciousness and that he had no dizziness. (TT III, 40). The CT scan of petitioner's head returned normal results. (TT III, 34).

The defense called Dr. Groff as an expert witness. (TT III, 2-5). Dr. Groff testified regarding concussions and memory function and did not offer any specific opinion regarding petitioner. (TT III, 5-25).

Petitioner elected to testify. (TT III, 53). Among other things, petitioner asserted that his wife was clumsy and that she fell while walking up the stairs and carrying their baby. Petitioner testified that he took the baby from her and began

yelling at her.  (TT III, 65-66, 89, 103-04).  He asserted that his yelling had motivated his wife to attack him.  (TT III, 88).

Petitioner indicated that he brought the baby into the apartment that he and his wife shared.  He stated that he did not see Brittany enter the apartment.  He claimed that he was sitting at the table in the kitchen when he "heard a loud noise in the back of his head" and everything went blank.  (TT III, 71-72, 105-06, 109-10, 112-13. 118-19, 122-23).  Petitioner stated that he did not have any physical altercation or struggle with his wife on the date in question.  (TT III, 80).  Petitioner testified that he remembered being on the floor, seeing the fireplace, noting that the baby was gone and the door was open.  He recalled being on the ground at the bottom of the stairs.  (TT III, 72-73).  He stated that he believed that he told Brittany that they needed to go. He remembered the handcuffs being applied.  (TT III, 74).  He testified he did not know why he told Brittany that they needed to leave.  (TT III, 117).  Petitioner claimed to have no memory of making statements to police officers.  (TT III, 77-78, 87, 105).

Petitioner claimed that he had an open invitation to the downstairs apartment. (TT III, 83).  He testified that he did not remember trying to get into Mr. Rose's apartment.  He stated that he did not recall breaking in, cocking his fist back, and threatening Mr. Rose.  (TT III, 114).

The attorneys delivered their closing arguments.  (TT III, 128-66).  Judge Baillargeon delivered the jury instructions.  There were no objections.  (TT III, 166-87). The jury deliberated for approximately four hours and returned its verdict finding

-16-

petitioner guilty of first-degree home invasion and aggravated assault and finding him not guilty of second-degree child abuse. (TT III, 187-88).

On March 7, 2008, Judge Baillargeon sentenced petitioner to ten to thirty years' imprisonment on his first-degree home invasion conviction and twelve months in jail on his conviction for aggravated assault. (Sentencing Transcript (ST) 18-19, ECF No. 39; Judgment of Sentence Commitment to the Department of Corrections, found in Michigan Court of Appeals Record, ECF No. 42).

## B. Subsequent Proceedings

Petitioner pursued an appeal to the Michigan Court of Appeals. On November 19, 2009, the Michigan Court of Appeals rejected petitioner's arguments for lack of merit and affirmed his convictions for first-degree home invasion and aggravated assault.[5] (11/19/09 Op., ECF No. 42; *see also People v. Ketola*, No. 284363, 2009 WL 3929975 (Mich. Ct. App. Nov. 19, 2009)). On July 26, 2010, the Michigan Supreme Court denied review. (7/26/10 Order, ECF No. 43).

On February 7, 2011, petitioner filed his habeas corpus petition. (ECF No. 1). He filed his amended petition on August 22, 2011.[6] (ECF No. 14).

---

[5]The Court of Appeals found that the trial court had improperly scored offense variables under Michigan's sentencing guidelines and remanded the matter for resentencing and did not retain jurisdiction. (Op. at 3-4, 6).

[6]Petitioner subsequently filed a motion for relief from judgment. (ECF No. 40). On October 11, 2011, the trial court denied petitioner's motion. (10/11/11 Order, ECF No. 41). On January 26, 2012, the Michigan Court of Appeals denied petitioner's application for leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." (1/26/12 Order, ECF No. 44). On September 24, 2012, the Michigan Supreme Court denied petitioner's application for leave to appeal on the same basis. *People v. Ketola*, 820 N.W.2d 796 (Mich. 2012).

## Discussion

### I.    Amendment of Information

In Grounds I and VI petitioner argues that his rights under the Fourteenth Amendment's Due Process Clause and the Fifth Amendment were violated when the prosecutor requested and the trial court judge allowed amendment of the information. (Amended Petition at 6, ECF No. 14, PageID.531; ECF No. 1-1, PageID.137-43). Petitioner's invocation of the Fifth Amendment's Grand Jury Clause is misplaced. Indictment by a grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment. *See Branzburg v. Hayes*, 408 U.S. 665, 688 n. 25 (1972).

The sufficiency of a state charging information is generally not a proper subject for habeas corpus review. *Knewel v. Egan*, 268 U.S. 442, 446 (1925). The only requirement imposed upon state charging documents is that they inform an accused of the "nature and cause of the accusation," as required by the Sixth and Fourteenth Amendments. That is, the charging document must "give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006) (quoting *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984)). The offense must be described with enough clarity to inform the accused of the crime of which he stands charged and enable him, as presumptively innocent, to prepare for trial. *Koontz*, 731 F.2d at 369. When reviewing amendments to state charging documents in habeas corpus proceedings, the federal courts focus on the questions whether the defendant was surprised by the amendment

or otherwise prejudiced in his ability to defend himself at trial.  *See, e.g., Tague v. Richards*, 3 F.3d 1133, 1141-42 (7th Cir. 1993); *Wright v. Lockhart*, 854 F.2d 309, 312-13 (8th Cir. 1988); *Gibson v. Romanowski*, No. 2:12-cv-15650, 2015 WL 1926365, at *9 (E.D. Mich. Apr. 28, 2015); *Heiss v. Berghuis*, No. 1:10-cv-465, 2015 WL 1001535, at *10 (W.D. Mich. Mar. 5, 2015).

The Michigan Court of Appeals rejected all petitioner's arguments based on the amendment of the information.  The amendment of the information was not prejudicial, did not deny petitioner the ability to present a defense, did not constitute prosecutorial vindictiveness, and it did relieve the prosecution of its burden of proving the element of intent in violation of petitioner's due process rights.  (*See* Op. at 1-3).

The Michigan Court of Appeals rejected petitioner's due process claims based on assertions of prosecutorial vindictiveness.  The prosecutor's request was appropriate.  "The amendment of the information was proper and the prosecutor still had to prove beyond a reasonable doubt all of the elements of the crime: that defendant broke and entered into the apartment; that while entering or present in that dwelling defendant committed an assault; and that while defendant did so, someone was lawfully present in the apartment."  (Op. at 3).

I find that Grounds I and VI do not provide a basis for federal habeas corpus relief.  Petitioner has not demonstrated that the decision of the Michigan Court of Appeals rejecting these claims "was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States" or "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## II.   Sixth Amendment

Ground II is petitioner's claim that his Sixth Amendment right to attorney-client privilege was violated when an officer at the Allegan County Jail overheard trial strategy, informed the prosecutor, and the prosecutor moved to preclude any defense of involuntary intoxication. (Amended Petition at 7, ECF No. 14, PageID.532; ECF No. 1-3, PageID.212-13).

The Michigan Court of Appeals rejected petitioner's argument.  Petitioner's argument was founded on numerous factual assertions that found no evidentiary support in the record.  Among other things, the Michigan Court of Appeals noted that there was no evidence indicating who provided the prosecutor with the information regarding the defense.  "It could have come from defendant's wife or any number of other individuals.  There [was] not even any evidence that an officer was present during [petitioner's] discussion with his counsel.  There [was] also no evidence for [petitioner's] assertion that his wife admitted to having drugged him."  (Op. at 4-5).

Further, even assuming the facts were as petitioner claimed, there was no prejudice because petitioner did not comply with any of the statutory requirements necessary to assert an insanity defense.  *See* Mich. Comp. Laws § 768.20a(1). Petitioner could not assert the involuntary intoxication defense that his wife drugged him.  Mich. Comp. Laws § 768.21(1) provides that where, as here, a defendant has failed to provide the notice required under MCL 768.20a, "the court shall exclude

evidence offered by the defendant for the purpose of establishing an alibi or the insanity of the defendant."  (Op. at 5) (quoting MICH. COMP. LAWS § 768.21(1)). "'[I]nvoluntary intoxication is a defense included within the ambit of the insanity defense' and [] '[i]t follows therefore that defendant's failure to provide a notice of insanity defense within the time limits prescribed by statute precludes him from offering evidence at trial in support of that defense.'"  (Op. at 5) (citing *People v. Wilkins*,  459 N.W.2d 57, 60 (Mich. Ct. App. 1990).  Petitioner suffered no possible prejudice[7] and was not entitled to relief.  "[T]he evidence could not have been introduced regardless of whether the prosecutor was improperly advised of the defense[.]"  (Op. at 5).

Petitioner has not addressed, much less carried his burden under 28 U.S.C. § 2254(d).  I find that Ground II does not provide a basis for habeas corpus relief.

## III.  Recorded Conversations

In Ground III, petitioner argues that his Fourteenth Amendment due process rights and his Sixth Amendment right to present a defense were violated when the Allegan County jail's recordings of telephone conversations were destroyed.  (Amended Petition at 9, ECF No. 14, PageID.534; ECF No. 1-3, PageID.214).

---

[7]The Michigan Court of Appeals recognized that petitioner was required to show "demonstrable prejudice, or substantial threat thereof."  (Op. at 4) (quoting *Lakin v. Stine*, No. 99-1529, 2000 WL 1256900 (6th Cir. July 13, 2000) and *United States v. Morrison*, 449 U.S. 361, 365 (1981)).  "Even where there is intentional intrusion by the government into the attorney-client relationship, prejudice to the defendant must be shown before any remedy is granted."  (Op. at 4) (quoting  *United States v. Steele*, 727 F.2d 580, 586 (6th Cir. 1984)).

The Michigan Court of Appeals rejected this claim.  It found that there had been no bad faith on the part of the prosecutor or police.  The jail's telephone recording system had failed. Technicians removed the malfunctioning hard drive.  There was no evidence that it retained any recoverable information.  Dell had received the malfunctioning hard drive on December 13, 2007, and pursuant to its internal policy, it retained the hard drive for three days, after which it was destroyed.  (Op. at 5-6).

Petitioner has not carried his burden of rebutting the presumption of correctness that attaches to these factual finding by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Michigan's courts rejected petitioner's claim for lack of merit.  Petitioner has not addressed, much less carried his burden under 28 U.S.C. § 2254(d).  I find that Ground III does not provide a basis for habeas corpus relief.

## IV.  Forensic Evaluation

In Ground IV, petitioner argues that his Fourteenth Amendment due process rights were violated and that the trial court judge abused his discretion when he denied petitioner's counsel's request for a forensic evaluation.  (Amended Petition at 10, ECF No. 14, PageID.535; ECF No. 1-3, PageID.216-19).  Ground IV is unexhausted because it was not raised in state court.  Ground IV is patently meritless.  Petitioner withdrew the request for a referral for a forensic examination.  (HT, 13, ECF No. 34).  "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure to the applicant to exhaust remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  I find that Ground IV does not provide a basis for federal habeas corpus relief.

## V.    Expert Testimony

Ground V is petitioner's argument that his Fourteenth Amendment due process rights and his Sixth Amendment right to present a defense was violated when the court limited the scope of Dr. Groff's expert testimony.  (Amended Petition at 12, ECF No. 14, PageID.537; ECF No. 1-3, PageID.215).

The Michigan Court of Appeals rejected petitioner's arguments.  It noted that petitioner failed to follow the requirements for asserting an insanity defense.  Petitioner's assertion that the prosecution had notice of the expert testimony was "not the same as providing the specific required notice under MCL 768.20a."  (Op. at 5).  Further, it found that "all evidence related to involuntary intoxication was properly excluded.  Additionally, Michigan has eliminated the diminished capacity defense, replacing it with an 'all or nothing insanity defense.'"  (Op. at 5) (citing *People v. Carpenter*, 627 N.W.2d 276, 283 (Mich. 2001)).  "[E]vidence of mental incapacity short of insanity cannot be used to avoid or reduce criminal responsibility by negating specific intent.  Accordingly, any evidence which the expert intended to provide related to [petitioner's] ability to form an intent was properly excluded under MCL 768.21(1) based on [petitioner's] failure to provide notice of an insanity defense pursuant to MCL 768.20a(1).  As such, it was proper for the trial court to limit the expert's testimony to generalized statements regarding effects of concussions, and not permit statements specifically related to defendant."  (Op. at 5).

Petitioner has not demonstrated that the decision of the Michigan Court of Appeals rejecting these claims "was contrary to or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

## VI.    Jury Instruction

Ground VII is petitioner's argument that his Fourteenth Amendment due process rights were violated by a jury instruction regarding first-degree home invasion that relieved the prosecution of proving specific intent.  (Amended Petition at 13, ECF No. 14, PageID.538; ECF No. 1-3, PageID.222-23).  Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review.  Instead, the petitioner must show that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process."  *Henderson v. Kibbe*, 431 U.S. 145, (1977); *see also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law"); *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1077-78 (6th Cir. 2015).

The Michigan Court of Appeals rejected petitioner's argument.  There was no error or due process violation.  The challenged instruction for home invasion "provided to the jury is exactly what is provided for in CJI2d 25.2a.  It clearly required the prosecution to prove every element beyond a reasonable doubt and at no time shifted the burden to defendant and properly advised the jury of the elements of the charged offense per the amended information."  (Op. at 3).  I find that Ground VII does not provide a basis for federal habeas corpus relief.  *See* 28 U.S.C. § 2254(d).

## VII.  Certificate of Appealability

Should the Court deny the petition, it must determine whether a certificate of appealability should be granted.  28 U.S.C. § 2253(c)(2).  A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  529 U.S. at 484.  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims.  *Id.*

Examining petitioner's claims under the standard in *Slack*, reasonable jurists would not conclude this Court's assessment of petitioner's claims to be debatable or wrong.  Accordingly, I recommend that the Court deny petitioner a certificate of appealability.

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied on its merits.

Dated:  November 4, 2016          /s/  Phillip J. Green
                                          United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).